DETERMINED IN THE

# SUPREME COURT

OF THE

## STATE OF COLORADO.

---

## JANUARY TERM, 1895.

---

THE JOHN MOUAT LUMBER COMPANY v. THE CITY OF
DENVER.

1. STATUTORY DEDICATION.

A statutory dedication of streets, etc., to the public cannot be based upon an act which, though passed before the filing of a plat, did not go into effect until afterwards.

2. COMMON LAW DEDICATION—ESTOPPEL.

Where the owner of urban property, who has laid it off into lots, with streets, avenues, etc., sells such lots with reference to the plat, or with reference to a city plat which he adopts, his acts amount, as between him and the purchasers, to a dedication of the designated streets, avenues and alleys to the public; but so far as the city is concerned, such acts amount to a mere offer of dedication, which may be withdrawn at any time prior to acceptance by the authorities of the city.

3. SAME.

To constitute a complete common law dedication of streets, etc., by the owner of the property, there must be an acceptance by the city.

4. VACATION OF STREETS.

The vacation of one street has no effect upon the streets intersecting the same.

*Error to the District Court of Arapahoe County.*

THIS suit was instituted by plaintiff in error, The John Mouat Lumber Company, a corporation, against the city of Denver, for the purpose of determining who had the better right to those portions of Twenty-Sixth and Twenty-Seventh streets between Blake street and the railroad grounds, as marked upon Case & Ebert's addition to the city of Denver. See plat.

In the district court plaintiff suffered a nonsuit at the conclusion of its testimony. To the judgment of nonsuit it duly excepted and brings the case here upon error. The facts are undisputed, and so far as necessary to an under standing of the opinion are as follows:

The land in controversy is a part of a quarter section of land patented by the United States to Francis M. Case under date of July 17, 1867. In April, 1868, Case filed a map of Case & Ebert's addition to Denver city, of which addition the parcels of land in controversy are a part.

Depot street is one of the streets upon this plat. It embraces a part of the ground in dispute, viz., the intersection of Twenty-Sixth and Twenty-Seventh streets with Depot street. The other parcels of land in dispute are the two *culs-de-sac* between Depot street and Blake street upon Twenty-Sixth and Twenty-Seventh streets, the entire ground in controversy being a strip one hundred and eighty feet in length by eighty feet in width on Twenty-Sixth street, and a like amount on Twenty-Seventh street, as platted.

There are no streets beyond the railroad tracks or on the northwesterly side of the ground in dispute, and there is no means of ingress or egress in that direction. There are now, and have been for many years past, a large number of railroad tracks entering and contiguous to Depot street at the point of intersection with Twenty-Sixth and Twenty-Seventh streets. By an ordinance duly passed and approved on the 4th day of May, 1871, the city of Denver vacated and abolished Depot street, but no part of either Twenty-Sixth or Twenty-Seventh streets was included in such vacating ordinance. The evidence does not show that any part of the

premises in controversy was ever accepted as a public street by the city prior to the bringing of this suit, but, on the contrary, it is shown that portions of the property were at all times impassable and unfit for use for street purposes; one of these streets having a large depression in it covered with water, described by the witnesses as a slough, and the other having a ditch and a steep embankment seven or eight feet in height, although pedestrians and teams at times passed across the premises.

Some years before the institution of this action, plaintiff in error purchased the grounds theretofore known as Depot street, and also the two *culs-de-sac* aforesaid, took possession, inclosed the premises with a substantial fence, and has ever since remained in such possession. By the ordinance vacating and abolishing Depot street, all streets and alleys lying northwest of the railroad company's right of way were also abolished. The evidence shows that neither of the parcels of land in controversy has ever been accepted by the city for street purposes, that neither has ever been graded or in any way improved by the city, but the ground has been for many years unused by it and occupied as private property. In one of these streets a dwelling house is situated near the center. This house, which was built in 1871, remained at the time of the institution of this suit, in 1888.

The plat on the following page is the one referred to.

Messrs. MARKHAM & CARR, for plaintiff in error.

Mr. JOHN F. SHAFROTH, Mr. F. A. WILLIAMS and Mr. A. B. SEAMAN, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

There was no statutory dedication by the filing of the plat, for the reason that the first statute upon which a statutory dedication could be based, although adopted in January, 1868, did not go into effect until the first day of July, 1868, while

the plat of the Case & Ebert addition to the city of Denver was filed on the 7th day of the intervening month of April. Revised Statutes of 1868, p. 619; 2 Dillon's Mun. Corp., sec. 628; *The City of Denver v. Clements*, 3 Colo. 472.

It is equally clear, we think, that there was a common law dedication by the owner of the pieces of land in controversy, these parcels being portions of certain streets marked upon the plat of the Case & Ebert addition to the city of Denver. After the filing of the plat, the owners of the territory platted, from time to time, sold lots in this addition with reference to this plat. Although these lots were sold to private parties, they were deeded by reference to the plat, and the grantors and their privies are estopped from denying the dedication to the public of the streets and alleys marked thereon. This is the rule established in *The City of Denver v. Clements*, *supra*. The decision in the *Clements Case* was affirmed in the subsequent case of *Ward v. Farwell*, 6 Colo. 66. In both cases the following language from Mr. Angell is quoted with approval:

"It may be stated, as a general rule, that, where the owner of urban property, who has laid it off into lots, with streets, avenues, and alleys intersecting the same, sells his lots with reference to a plat in which the same is so laid off, or where, there being a city map in which this land is so laid off, he adopts such map, by sales with reference thereto, his acts will amount to a dedication of the designated streets, avenues and alleys to the public." Angell on Highways, sec. 149.

The doctrine of the text of Mr. Angell is supported in the following, among other cases: *Bartlett v. Bangor*, 67 Me. 460; *Carter v. Mason*, 4 Ore. 339; *West Covington v. Freking*, 8 Bush (Ky.), 121; *Hawley et al. v. The Mayor and City Council of Baltimore*, 33 Md. 270; *City of Evansville et al. v. Evans*, 37 Ind. 229; *Weisbrod v. The C. & N. W. Ry. Co.*, 21 Wis. 609; *In re Opening of Pearl St.*, 111 Pa. St. 565; Elliott on Roads and Streets, p. 89; Am. & Eng. Ency. of Law, vol. 5, p. 407, and cases cited.

It must, however, be conceded that the rule contended for

by appellant—that such platting and sale of lots constitute a dedication of the streets and alleys delineated upon the plat only as between the grantors and purchasers from them, and that so far as the city is concerned such acts amount to a mere offer of dedication which may be withdrawn at any time prior to acceptance by the public authorities of the city—is well supported by both reason and authority. *The City of Chicago v. Drexel*, 141 Ill. 89; *The People v. Reed et al.*, 81 Cal. 70, and cases cited.

If this question were *res nova* in this state, we should examine the conflicting decisions with care for the purpose of ascertaining to which side preference should be given, but under the circumstances we do not feel warranted in entering upon this field of investigation. The rule that it is better to have the law certain than that the result in a given case should be in accordance with strict logic has force in all cases, but more particularly in those where the rights of real property are concerned. At common law there must be both an offer of dedication by the owner, and an exceptance by the city, to constitute a complete dedication. This has been held by this court in two recent cases. *The City of Denver v. R. R. Co.*, 17 Colo. 583; *Trine v. The City of Pueblo*, *post*, 102.

The *Clements Case*, although recognizing the doctrine that to constitute a complete dedication an acceptance on the part of the public authorities is necessary, holds that by the filing of a plat showing blocks, lots, streets and alleys, and selling lots with reference thereto, the owner is thereby estopped from denying an intention to dedicate such streets and alleys to public use, and that he cannot recall his dedication, but the streets may be opened by the local authorities at such reasonable time as the public interest may require.

The facts in this case are in many particulars similar to those in the case of *The City of Denver v. Clements, supra.* In that case, as in this, a plat had been prepared and made a public record. Upon these plats certain parts are designated as streets and certain other portions as alleys, these streets

and alleys being a continuation of certain public streets and alleys of the city of Denver. After the filing of such plat, many lots were sold with reference thereto, and we hold in this case, in accordance with the opinion of the court in the *Clements Case*, that these acts show an offer to dedicate on the part of the owner, which offer he may not withdraw at his pleasure. This does not, however, do away with the necessity for acceptance, and the city may under certain circumstances lose its right to accept.

The only evidence in this record relied upon to establish an acceptance by the city shows that although the particular portions of the streets in controversy in this action were not used or occupied by the public to any considerable extent, other portions of these streets were occupied and used continuously from the time of filing the plat to the time of the institution of this suit. It is also admitted that on the 4th day of May, 1871, by an ordinance duly adopted, Depot street, in Case & Ebert's addition to the city of Denver, and all streets and alleys lying northwest of the Denver Pacific Railway Company's right of way and southeast of the southwest line of W. street, in said Case & Ebert's addition, were vacated and abolished. The passage of this ordinance it is said indicates that the city authorities understood that these streets had been accepted; otherwise the ordinance would have been unnecessary. At the date of the institution of this suit, it is alleged the city authorities were about to take formal possession of the premises in controversy. These circumstances are entitled to but little weight upon the question of acceptance. As against this, the evidence on the part of plaintiff's witnesses tends to show that from the time of the filing of the map of Case & Ebert's addition, in 1868, to the time of bringing this suit,—a period of more than twenty years,—the ground in controversy had never been used by the city for any purpose whatsoever, although pedestrians and others did occasionally pass over it during a portion of the time. It has of late years been inclosed by a substantial fence and otherwise improved and used as private property. The evidence

further shows that this ground could only be made fit for street purposes by the expenditure of a large amount of money in filling and grading. It is also shown that in the center of one of these streets there is a dwelling house, erected in 1871, which has since that date been occupied as a place of residence without objection from any source. These uncontroverted facts, in view of the peculiar location of the property, its proximity to the main part of the city, the surrender of connecting streets for railroad and other purposes, we think are *prima facie* sufficient to show that the city did not intend to accept the property as a part of the public streets of the city of Denver. The doctrine of *estoppel in pais* is equitable in character and applies to the city as well as to the property owner. Judge Dillon, in his work on Municipal Corporations, states the law as follows:

" The author cannot assent to the doctrine that, as respects public rights, municipal corporations are impliedly within ordinary limitation statutes. It is unsafe to recognize such a principle. But there is no danger in recognizing the principle of an *estoppel in pais* as applicable to exceptional cases, since this leaves the courts to decide the question, not by the mere lapse of time, but upon all the circumstances of the case to hold the public estopped or not, as right and justice may require." Dillon's Municipal Corporations, 4th ed., sec. 675. We, of course, shall not attempt to anticipate the character of the evidence that may be introduced to rebut that introduced by plaintiff in this behalf. Until the facts are fully presented the court cannot finally pass upon the question.

In view of a new trial we may properly consider the effect of the ordinance vacating Depot street upon the places of intersection with Twenty-Sixth and Twenty-Seventh streets. The validity of the ordinance vacating Depot street is not contested in this case, but it is contended that as this ordinance did not by its terms vacate either Twenty-Sixth or Twenty-Seventh streets, and as these streets extended across Depot street, the premises at the places of intersection still remained public streets. A reference to the plat filed shows

that the premises alluded to were covered equally by Depot street and by Twenty-Sixth and Twenty-Seventh streets. As to these parcels of land there was therefore an offer of dedication to the public—*first*, as a part of Depot street; *second*, as parts of Twenty-Sixth and Twenty-Seventh streets. It follows from this that the vacation of Depot street had no effect upon either Twenty-Sixth or Twenty-Seventh streets, the intersections of those streets with Depot street still remaining as before the passage of the ordinance. This will leave the question of acceptance of this space by the city upon the original offer of dedication open to investigation, under the same terms as the remainder of the disputed territory.

In this case there has never been a statutory dedication of the premises in controversy to the city for public purposes. The right of the city is based entirely upon equitable considerations, and as against these are to be weighed the equities of plaintiff in error with its title. From the evidence introduced, the superior equities are with the plaintiff; hence the judgment of nonsuit should not have been rendered. It will accordingly be reversed and the cause remanded.

*Reversed.*